Filed 1/8/25  P. v. Edwards CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW EDWARDS,<br><br>    Defendant and Appellant. | F085114<br><br>(Super. Ct. No. MCR033982)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

William Safford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2013, appellant Matthew Edwards was convicted by jury of four counts of the premeditated attempted murder of a peace officer engaged in the performance of their duties (Pen. Code,[1] §§ 664, subds. (e), (f)/187, subd. (a)), counts 1-4), assault with a firearm on a peace officer (§ 245, subd. (d)(2), counts 5-8), felon in possession of a firearm (former § 12021, subd. (a)(1), count 9), and vehicle theft (Veh. Code, § 10851, subd. (a), count 10).[2]  In addition, the jury found true firearm use enhancements as to counts 1 through 8.  (See §§ 12022.53, subds. (b), (c), 12022.5, subd. (a)(1).)  Edwards was sentenced to an indeterminate prison term of 60 years to life, plus a determinate term of 83 years.

In 2022, Edwards filed a petition to vacate his convictions for premeditated attempted murder, and to be resentenced pursuant to former section 1170.95, now section 1172.6.[3]  Following the appointment of counsel to represent Edwards and the submission of a motion to dismiss by the prosecutor, the trial court issued an order to show cause.  At the evidentiary hearing on Edwards's petition, the parties submitted upon the record of conviction.  The trial court denied Edwards's petition, finding him ineligible for resentencing relief.

Edwards raises three claims on appeal.  First, he contends that the superior court prejudicially erred in the denial of his petition in multiple respects, including:  by applying an incorrect standard of proof in finding that he is ineligible for resentencing relief, applying the law of felony murder to his convictions for premeditated attempted

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

[2] Edwards's conviction for vehicle theft was ultimately reversed on direct appeal.

[3] On June 30, 2022, the statute was renumbered as section 1172.6 without further substantive changes.  (See *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)  We refer to the statute by its current designation throughout the remainder of this opinion.

murder, and relying upon facts from this court's opinion on Edwards's direct appeal. Second, Edwards asserts there is insufficient evidence to support his convictions for premeditated attempted murder under the kill zone theory. Third, Edwards contends that his appointed counsel rendered ineffective assistance of counsel in the litigation of his petition. Finding Edwards's claims meritless, we affirm the trial court's order denying his petition for resentencing.

## FACTUAL AND PROCEDURAL HISTORY

On April 28, 2010, the Madera County District Attorney filed an information charging Edwards with the willful, deliberate, and premeditated attempted murders of peace officers engaged in the performance of their duties (§§ 664, subds. (e), (f)/187, subd. (a)), counts 1-4), assault with a firearm on a peace officer (§ 245, subd. (d)(2), counts 5-8), felon in possession of a firearm (former § 12021, subd. (a)(1), count 9), and vehicle theft (Veh. Code, § 10851, subd. (a), count 10). As to counts 1 through 8, the information further alleged that Edwards had personally and intentionally discharged a firearm in the commission of a specified felony (§ 12022.53, subd. (c)) and that he had personally used a firearm (§§ 12022.5, subd. (a)(1), 12022.53, subd. (b)).

On February 20, 2013, Edwards was convicted by jury as charged.

On September 25, 2015, following Edwards's direct appeal, this court reversed his conviction for vehicle theft on count 10. (See *People v. Edwards* (Sept. 25, 2015, F067823) [nonpub. opn.].)

On January 6, 2016, the trial court resentenced Edwards to an aggregate term of 60 years to life in state prison plus a determinate term of 83 years.

On February 25, 2022, Edwards filed a petition for resentencing (§ 1172.6). Following the appointment of counsel to represent Edwards, and the submission of a motion to dismiss by the prosecutor, the superior court held an evidentiary hearing on Edwards's petition.

3.

On September 30, 2022, at the hearing, the parties submitted on the record of conviction, declining to introduce any new or additional evidence. The trial court denied Edwards's petition.

***The Underlying Case***

The following statement of facts is derived from the record of conviction in Edwards's original appeal. (*People v. Edwards*, *supra*, F067823.)[4] Partial reporter's transcripts from Edwards's criminal trial were submitted as exhibits to the prosecutor's opposition. These transcripts establish the following facts:

On December 28, 2008, around 3:45 a.m., Madera Police Officer John Palazzola observed a red Plymouth Neon parked in a 7-Eleven store parking lot with two males inside. After the Neon left the parking lot, Officer Palazzola observed the vehicle commit several traffic violations. He activated his patrol car's emergency lights to initiate a traffic stop. The red Neon sped away.

Officer Palazzola pursued the vehicle, observing additional traffic violations during the chase. As the Neon continued to flee, the front passenger leaned out of the window, turned towards Officer Palazzola, and pointed his arm at the officer and his patrol vehicle. Officer Palazzola was approximately 50 yards behind the Neon on Avenue 13 when this occurred.

Officer Palazzola then heard gunshots and saw three muzzle flashes coming from the passenger's hand. He immediately took evasive action to avoid the gunfire.

After the first round of gunfire, the Neon accelerated further and turned off its headlights to avoid detection. The vehicle's lights remained off for most of the pursuit, with only brief intervals of illumination. Several other Madera Police officers, including, Officers Jason Green, Josh Chavez, and Juan Gaona, joined the pursuit.

---

[4] We take judicial notice of the record from Edwards's direct appeal on our own motion. (Evid. Code, § 452, subd. (d) [authorizing a court to take judicial notice of records of "any court of this state"].)

The red Neon continued to evade the officers. While navigating an "S-turn" on State Route 145, the passenger leaned out of the window, aimed towards the officers, and fired at least two more shots. During the second round of gunfire, Officer Palazzola was 50 yards behind the Neon, with Officer Green 30 to 50 feet behind him and Officers Chavez and Gaona behind both.

The pursuit eventually reached Highway 99, where the red Neon entered the southbound lanes. Once on the highway, the passenger leaned out of the Neon a third time and fired at least two shots while the Neon was traveling at approximately 110 miles per hour. Officer Palazzola, who was traveling approximately 150 yards behind the Neon, made an evasive maneuver to avoid being hit by gunfire.

The Neon abruptly exited State Route 99 on the Princeton exit. Officers Chavez and Gaona pursued the Neon to Parkway Drive. Officer Chavez was in the first position, approximately 80 feet behind the Neon, and Officer Gaona was in the second position, approximately 10 to 15 yards behind Officer Chavez. The passenger leaned out of the Neon and facing Officer Chavez's direction, shot his gun three times, causing Officer Chavez to veer to the left.

The officers pursued the Neon into the City of Fresno, where it eventually crashed into a light pole and came to a stop. Two individuals fled the vehicle. Fresno Police Officer Jonathan Linzey, who had joined the pursuit in Fresno, watched the passenger from the time that he fled the Neon until he was apprehended. Officer Linzey identified Edwards as the passenger. Other officers, including Officer Michael Fortune, who had joined in the pursuit, identified Edwards as the Neon's passenger by his clothing. The driver of the Neon was never apprehended.

### *The Prosecutor's Statements in Closing Argument*

In closing argument, the prosecutor explained that if the jury concluded that Edwards was the driver of the Neon, rather than the passenger/shooter, it could still convict Edwards of premeditated attempted murder as an aider and abettor. However, if

the jury found Edwards guilty as an aider and abettor, the jury could not find true the enhancement for the personal use of a firearm because the other individual in the Neon would be the one who had used the gun.

The jury found Edwards guilty of all four counts of premeditated attempted murder and found true the firearm enhancements alleged as to these counts.

### *The Trial Court's Ruling on Edwards's Petition for Resentencing*

In denying Edwards's petition, the trial court made the following comments:

> "THE COURT:  The burden of proof in this matter[ is] on the prosecution to establish beyond a reasonable doubt that Mr. Edwards is ineligible for resentencing.  Mr. Edwards is ineligible for resentencing if he may still be found guilty of attempted murder pursuant to Penal Code Section 188 and 189.  Section 189 provides that, 'A person may be convicted of murder if he was the actual killer or if he was a major participant in the commission of the crime and acted [with] reckless indifference to human life.'

> "The – the parties have submitted on the record of conviction in this matter, and the record of conviction reveals as follows:  The trial testimony from Officer Palaz[z]ola was that while he was pursuing the vehicle in which Mr. Edwards was an occupant, he observed the front seat passenger reach outside of the vehicle window and fire three rounds from a firearm at the pursuing peace officers.  Officer Palaz[z]ola observed the front passenger fire two additional rounds later – from the vehicle later in the pursuit.  Mr. Edwards is identified as that front seat passenger based on the distinctive clothing that he was wearing and because he was observed by a Fresno peace officer exit the front passenger seat and flee on foot after the vehicle had crashed.

> "The jury found true that Mr. Edwards personally discharged a firearm at officers during the pursuit.  There was no allegation in the Information or evidence – evidence presented during the trial to support a theory that anyone other than the actual shooter fired at officers.

> "And, finally, on appeal, at which Mr. Edwards' convictions for attempted murder were affirmed, the Fifth District Court of

6.

Appeal specifically found that Mr. Edwards was the occupant of the suspect vehicle who fired at the pursuing peace officers.

"Based on this, the record of conviction establishes beyond a reasonable doubt a conclusion that Mr. Edwards was the actual shooter in this case. Further, the record establishes beyond a reasonable doubt that Mr. Edwards was a major participant in the crime and acted in reckless indifference to human life.

"For those reasons, I find that Mr. Edwards may still be convicted under Penal Code Section 189 subdivision (c) for the attempted murders, and accordingly, I'm ordering that his petition be denied."

## DISCUSSION

**I.    The Superior Court's Conclusion That Edwards Is Ineligible for Resentencing Relief Under Section 1172.6**

Edwards challenges the superior court's ruling denying his petition for resentencing (§ 1172.6) on three grounds. First, he contends the court applied an incorrect standard of proof by concluding that he "may still be convicted" of premeditated attempted murder following changes made to sections 188 and 189. Second, he asserts that the court misunderstood the amendments to the law on premeditated attempted murder, as demonstrated by its conclusion that Edwards was not only the sole and actual shooter, but that he was also a major participant who had acted with reckless indifference to human life. Third, Edwards contends that the superior court erred by relying upon this court's prior appellate opinion in determining that Edwards is ineligible for resentencing relief. Although we agree that the trial court erred in some respects, neither the individual errors nor their cumulative effect demonstrate that Edwards suffered prejudice as a result.

### A.  Section 1172.6

"Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) amended the felony-murder rule by adding section 189, subdivision (e). [Citation.] It provides that a participant in the qualifying felony is liable for felony murder only if the person:

7.

(1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life. [Citation.] The Legislature also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*People v. Harden* (2022) 81 Cal.App.5th 45, 50-51*; People v. Strong* (2022) 13 Cal.5th 698, 707-708.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," initially codified in former section 1170.95. (*People v. Strong, supra*, 13 Cal.5th at p. 708.) The initial version of former section 1170.95 permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by [Senate Bill 1437]." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2020-2021 Reg. Sess.) (Senate Bill No. 775) made substantive amendments to former section 1170.95 that were consistent with *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

In the case at bench, Edwards's petition proceeded to an evidentiary hearing. At an evidentiary hearing on a section 1172.6 petition for resentencing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is

guilty of ... attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "A finding that there is substantial evidence to support a conviction for ... attempted murder ... is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid*.) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid*.)

"Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) Reversal is not warranted unless " ' "upon no hypothesis whatever is there sufficient substantial evidence to support [the trial court's ruling]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

### B. Analysis

Prior to the enactment of Senate Bill No. 1437, an aider and abettor could be convicted of premeditated attempted murder under the natural and probable consequences doctrine. (See *People v. Favor* (2012) 54 Cal.4th 868, 874 (*Favor*); see also, *People v.*

*Williams* (2024) 103 Cal.App.5th 375, 388, review granted Sept. 11, 2024, S286314 ["Prior to the effective date of Senate Bill No. 1437, the natural and probable consequences doctrine was an available theory of both premeditated and unpremeditated attempted murder"].)

Two years after *Favor* was decided, our Supreme Court held that "[A]n aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine." (*People v. Chiu* (2014) 59 Cal.4th 155, 158-159.) However, the high court declined to explicitly overrule or disapprove *Favor*, finding it distinguishable in several respects. (See *People v. Chiu,* at p. 163.)

Edwards was convicted of premeditated attempted murder under the law as it existed when *Favor* was decided. Thus, in proving his guilt for premeditated attempted murder, the prosecution could have proceeded under a theory of imputed malice. Specifically, the prosecutor would have had to have proven that Edwards aided and abetted a target offense for which the attempted murders were a natural and probable consequence, and the perpetrator of the attempted murders acted with premeditation. But the record of conviction supports the conclusion that the prosecutor did not proceed under such a theory.

In closing argument, the prosecutor explained that if the jury found that Edwards was the driver rather than the passenger/shooter, it could still convict Edwards of premeditated attempted murder based upon aiding and abetting the intended crime, i.e., the shootings. In the context of the record, the prosecutor argued that Edwards was guilty as either the direct perpetrator or as a *direct* aider and abettor. The prosecutor explained that if the jury found Edwards guilty as a (direct) aider and abettor, it could not find true the enhancements alleged for the personal use of a firearm because the other individual in the Neon would be the one who had used the gun. The jury found Edwards guilty of all four counts of premeditated attempted murder and found true the firearm enhancements attached to these counts. He was therefore convicted as the sole and actual shooter.

10.

The record suggests that the prosecutor never advanced a theory of imputed malice.[5]  Further, the jury ostensibly convicted Edwards of the premeditated attempted murders based upon a finding that he was the direct perpetrator.  Nonetheless, the trial court appropriately issued an order to show cause, finding that Edwards's ineligibility for resentencing relief could not be established as a matter of law at the prima facie stage.

At the evidentiary hearing, the superior court, acting as an independent factfinder, drew the same conclusion as the jury had when Edwards was originally prosecuted, finding that Edwards was the sole and actual shooter.  By implication, the superior court concluded that Edwards had acted with express malice in the commission of all four counts of premeditated attempted murder.[6]

The evidence adduced at Edwards's criminal trial established that the passenger in the red Neon was the only shooter during the police pursuit.  Shots were fired at officers from the Neon's passenger seat on four separate occasions.  First, at Officer Palazzola when he was 50 yards behind the Neon on Avenue 13.  Second, at Officer Palazzola when he was 50 yards behind the Neon on State Route 145, with Officer Green 30 to 50 feet behind him and Officers Chavez and Gaona behind both.  Third, at Officer Palazzola on southbound Highway 99 when he was 150 yards behind the Neon.  And finally, at

---

[5]  The jury instructions given at Edwards's criminal trial clearly demonstrate, without resorting to improper factfinding (see *People v. Lewis*, *supra*, 11 Cal.5th at p. 972), that the prosecutor did not rely on the natural and probable consequences doctrine to establish Edwards's guilt for premeditated attempted murder.  Had the parties and the court consulted these instructions, Edwards's petition could have been denied at the prima facie stage.  Because it is unclear whether the jury instructions were available at Edwards's evidentiary hearing, we do not factor them into our analysis.

[6]  Edwards argues that the trial court's conclusion that he was the sole and actual shooter was insufficient to show that he had acted with express malice.  Not so.  The trial court's conclusion that Edwards is still guilty of attempted murder under amended sections 188 and 189, means that it necessarily concluded that Edwards had acted with express malice.  (See CALCRIM Nos. 600 & 601.)

Officer Chavez when he was 80 feet behind the Neon on Parkway Drive, with Officer Gaona 10 to 15 yards behind him.

Officers Palazzola and Chavez testified that the front passenger aimed directly at them while shooting, causing them to swerve their vehicles to avoid the gunfire. Officer Palazzola specifically recalled seeing the passenger's arm extend perpendicularly out of the vehicle before turning to aim at him.

Further, eyewitness testimony placed Edwards in the passenger seat of the red Neon. Officer Chavez observed someone wearing a black and white patterned jacket leaning out of the Neon and shooting a gun at him. Officer Fortune saw the passenger's head and shoulders extending out of the Neon, explaining that the hood of the passenger's jacket appeared to be light in color, consistent with the inside of the jacket Edwards was wearing. And, Officer Linzey saw the passenger, who was wearing a black and white patterned jacket, exit the front passenger door after the vehicle stopped and he apprehended that person—Edwards.

Based upon the fact that Edwards fired multiple shots at the pursuing officers at four separate intervals during the pursuit, he not only acted with the intent to kill, but also with premeditation and deliberation. Each interval between the shootings gave Edwards the opportunity to reflect upon his actions. Each time, he decided to continue firing his gun at the pursuing officers. (*People v. Solomon* (2010) 49 Cal.4th 792, 812 [" ' "Premeditation and deliberation can occur in a brief interval. 'The test is not time, but reflection. "Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." ' " ' "].)

We conclude that substantial evidence supports the superior court's conclusion that Edwards was the sole and direct perpetrator of the shootings and that he is ineligible for resentencing relief under section 1172.6. We now turn to his contention that the court nonetheless prejudicially erred in denying his petition for resentencing.

12.

### 1. The Standard of Proof Applied by the Superior Court

At an evidentiary hearing, the prosecutor must prove, "beyond a reasonable doubt, that the petitioner is guilty of … attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

Edwards suggests that the trial court may have failed to apply this standard of proof in determining that he was ineligible for resentencing relief under section 1172.6. He directs this court to the prosecutor's motion to dismiss, which summarized the issue before the court as follows: " 'the sole question to be answered at [the] hearing [is] whether the Petitioner *could still be* convicted of murder [or attempted murder.]' " (Italics added.) Subsequently, when ruling on Edwards's petition, the superior court stated that it was the prosecutor's burden "to establish beyond a reasonable doubt that Mr. Edwards is ineligible for resentencing." However, at the conclusion of Edwards's hearing, the trial court stated that "Mr. Edwards '*may still be convicted* [of premeditated attempted murder].' " Edwards takes issue with the superior court's use of the phrase "may still be convicted" rather than "is guilty of" premeditated attempted murder.

According to Edwards, the superior court may have applied a substantial evidence test in concluding that he is ineligible for resentencing relief. (See e.g., *People v. Vance* (2023) 94 Cal.App.5th 706, 714 (*Vance*) [prior to the enactment of Senate Bill No.775, some courts had interpreted section 1172.6 as permitting the denial of a petition for resentencing so long as there was substantial evidence to support the petitioner's conviction under sections 188 and 189 as amended, rather than requiring the trial court to act as an independent factfinder to determine whether the petitioner is guilty of murder beyond a reasonable doubt under the current law].) As Senate Bill No. 775's amendments to section 1172.6 have made clear, "a court determination that substantial evidence supports a homicide conviction is not a basis for denying resentencing after an

13.

evidentiary hearing." (*People v. Strong*, *supra*, 13 Cal.5th at p. 720, citing former § 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2.)

The evidentiary hearing on Edwards's petition was held on September 30, 2022, nearly 10 months after Senate Bill No. 775's amendments to former section 1170.95 went into effect. Contrary to Edwards's assertion, the proper inquiry is not whether the record demonstrates that the court correctly applied the law, but rather, whether the record affirmatively demonstrates that it did not. (*People v. Thomas* (2011) 52 Cal.4th 336, 361 [in the absence of affirmative evidence to the contrary, we presume that the trial court knew and correctly applied the law].)

We conclude that there is no affirmative indication in the record that the superior court failed to apply the correct standard in denying Edwards's petition. The law was settled at the time of Edwards's hearing. Further, neither the prosecutor nor the trial court ever used the words "substantial evidence" or "sufficient evidence." Instead, both described the prosecutor's burden of proof as being proof "beyond a reasonable doubt." We are not persuaded that the trial court's conclusion that Edwards "may still be found guilty of attempted murder pursuant to Penal Code Section[s] 188 and 189," demonstrates that the court applied a lesser standard than beyond a reasonable doubt.

Edwards further contends that the superior court erred by deferring to factual findings made by the jury, rather than acting as an independent factfinder. At the evidentiary hearing, " 'it is the [trial] court's responsibility to act as independent fact finder and [to] determine whether the evidence establishes a petitioner would be guilty of murder under amended sections 188 and 189 and is thus ineligible for resentencing under section [1172.6].' " (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.)

To support his claim, Edwards directs this court to the following comment made by the superior court in its ruling denying his petition: "*The jury found true* that Mr. Edwards personally discharged a firearm at officers during the pursuit. There was no allegation in the Information or evidence…presented during the trial to support a theory

14.

that anyone other than the actual shooter fired at officers." This was not an improper finding of fact. The superior court merely observed that the jury had concluded that Edwards was the sole and actual shooter, thereby ruling out any possibility that he was convicted upon any theory of aiding and abetting, whether direct or indirect. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 548 ["Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].) To that end, the superior court also made independent findings of fact that were consistent with the jury's conclusion that Edwards was the sole and actual shooter. We conclude that the record demonstrates that the superior court applied the correct standard in concluding that Edwards was ineligible for section 1172.6 resentencing relief.

### 2. The Trial Court's Analysis of the Felony Murder Rule and its Application to Premeditated Attempted Murder

Next, Edwards contends that the trial court misunderstood the law on attempted murder. In addition to finding that Edwards was the sole and actual shooter, the superior court further held that "the record establishes beyond a reasonable doubt that Mr. Edwards was a major participant in the crime and acted in reckless indifference to human life."

We agree with Edwards's assertion that the trial court's conclusion on this point was erroneous. Attempted murder is not one of the enumerated felonies that may support application of the felony murder rule. (See *People v. Concha* (2009) 47 Cal. 4th 653, 661-662, fn. 2 [explaining that "attempted murder is not one of the enumerated felonies in section 189"].) Consequently, the trial court erred by finding that Edwards was a major participant in the underlying felony who had acted with reckless indifference to human life. However, the error was harmless upon the instant record.

As discussed, the superior court also found that the trial evidence demonstrated, beyond a reasonable doubt, that Edwards was the sole and actual shooter. Therefore, malice could not have been imputed to him. Instead, the superior court's finding that

15.

Edwards was ineligible for resentencing relief necessarily required the court to find that Edwards had personally harbored express malice. Despite the superior court's erroneous reliance upon the felony murder rule, its determination that Edwards is (still) guilty of premeditated attempted murder under sections 188 and 189 was correct.

### 3. The Superior Court's Reliance Upon Our Opinion on Edwards's Direct Appeal

Finally, Edwards contends that the superior court prejudicially erred by relying upon facts from our prior appellate opinion. Subdivision (d)(3) of section 1172.6 provides that "The court may…consider the procedural history of the case recited in any prior appellate opinion." This court has previously held that while the procedural history of a prior appellate opinion may be relied upon, by implication, "the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

The prosecutor's motion to dismiss Edwards's petition observed that our prior appellate opinion had found the following: " 'the passenger pointed a handgun out the window and fired it repeatedly … at the police cars' and that 'Fresno Police Officer Jonathan Linzey caught up with the passenger, Edwards, inside the complex and arrested him.' " These statements, included within the procedural history of our prior opinion, were technically within the ambit of evidence that may be considered at an evidentiary hearing. (See *People v. Edwards* (Sept. 25, 2015, F067823) [nonpub. opn.]; see § 1172.6, subd. (d)(3).)

The prosecutor further represented that this court's "opinion shows that [this] court found [Edwards] was the actual shooter," a conclusion which likely rested upon additional facts outside of our procedural history. In its ruling, the superior court relied upon our prior opinion, observing that this court had previously found that Edwards was the occupant of the suspect vehicle that had fired at the officers.

Edwards did not object to the admission of this evidence. His failure to lodge a timely and specific objection to the superior court's reliance upon our prior opinion resulted in forfeiture of his claim on appeal. (See *Vance*, *supra*, 94 Cal.App.5th at p. 162 ["when an appellate opinion is admitted at an evidentiary hearing under section 1172.6, without objection," a party forfeits any challenge to the superior court's consideration of the opinion]; *People v. Myles* (2021) 69 Cal.App.5th 688, 696 [defendant forfeited his challenge to admissibility of evidence admitted at evidentiary hearing under former section 1170.95 by failing to object]; Evid. Code, § 353, subd. (a) [error in admitting evidence may not be basis for reversal of judgment unless "an objection to or a motion to exclude or to strike the evidence ... was timely made and so stated as to make clear the specific ground of the objection or motion"].)

Forfeiture aside, we conclude that any error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (See *People v. Epps* (2001) 25 Cal.4th 19, 29 [error based solely on state law is subject to *Watson* harmless error analysis]; see also, *Lewis, supra*, 11 Cal.5th at pp. 957-958 [procedural error under section 1172.6 is "state law error only, tested for prejudice under [*Watson*]"]; and, *Vance, supra*, 94 Cal.App.5th at pp. 716-717 [the harmless error standard in *Watson* applies where the superior court improperly considered an appellate opinion at the evidentiary hearing].) Under *Watson*, Edwards "has the burden of showing that it is reasonably probable that, in the absence of the error, he ... would have enjoyed a more favorable outcome." (*Vance*, at p. 710.) No such probability exists upon the instant record. Our opinion is merely duplicative of the trial evidence, which amply demonstrates that Edwards was the sole and actual shooter, that he acted with express malice, and that he is therefore, ineligible for section 1172.6 resentencing relief.

## II. The Kill Zone Theory Does Not Implicate Imputed Malice

Edwards submits that there is insufficient evidence to support his convictions for premeditated attempted murder based upon the kill zone theory. He argues that following

17.

his conviction, our Supreme Court has limited the scope of the kill zone theory (see *People v. Canizales* (2019) 7 Cal.5th 591, 602 (*Canizales*)), and that the evidence is no longer sufficient to support his convictions under this theory. We conclude that his claim may not be raised in the context of section 1172.6 petition proceedings.

### A. Background: This Court's Discussion of the Kill Zone Theory on Edwards's Direct Appeal

On direct appeal, Edwards challenged the sufficiency of the evidence supporting his convictions on counts 2 and 4, the premeditated attempted murders of Officers Green and Gaona, respectively. Following an extensive analysis of the trial evidence, this court found substantial evidence of Edwards's intent to kill Green and Gaona under the kill zone theory. Although the jury was not instructed pursuant to the kill zone theory (See CALCRIM No. 600), as this court explained, " '[t]his concurrent intent theory is not a legal doctrine requiring special jury instructions,' … [it] is 'simply a reasonable inference the jury may draw in a given case.' " Following a detailed discussion, this court concluded that the evidence supported Edwards's conviction for attempted murder on all four counts under the kill zone theory.

### B. Legal Principles: The Kill Zone Theory

Like first degree premeditated murder, attempted murder requires evidence of express malice—implied malice is insufficient. (*People v. Lee, supra,* 31 Cal.4th at p. 623.) However, the doctrine of transferred intent does not apply to attempted murder. (*People v. Bland* (2002) 28 Cal.4th 313, 331.) Therefore, "[w]hen a single act is charged as an attempt on the lives of two or more persons, the intent to kill element must be examined independently as to each alleged attempted murder victim." (*Canizales*, *supra*, 7 Cal.5th at p. 602.)

Although the intent to kill a specific target does not transfer to an unintended surviving victim, it does not preclude a finding that the assailant concurrently intended to kill others. In one scenario, an assailant may fire indiscriminately into a crowd of people,

18.

intending to kill anyone who gets caught in the hail of bullets. (See *People v. Thompkins* (2020) 50 Cal.App.5th 365, 396, disapproved on other grounds by *In re Lopez* (2023) 14 Cal.5th 562, 584.) Alternatively, the assailant may intend to eliminate a specific target by killing all individuals in close proximity to the intended target. (See *Canizales, supra*, 7 Cal.5th at p. 603.) This is the so-called "kill zone" theory. (*Id.* at p. 596.)

"[A] shooter may be convicted of multiple counts of attempted murder on a 'kill zone' theory where the evidence establishes that the shooter used lethal force designed and intended to kill everyone in an area around the targeted victim (i.e., the 'kill zone') as the means of accomplishing the killing of that victim." (*People v. Smith* (2005) 37 Cal.4th 733, 745-746, discussing *People v. Bland, supra*, 28 Cal.4th at pp. 329-330].)

For the kill zone theory to apply, the trier of fact must conclude: "(1) the circumstances of the defendant's attack on a primary target, including the type and extent of force the defendant used, are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm – that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death – around the primary target and (2) the alleged attempted murder victim who was not the primary target was located within that zone of harm. Taken together, such evidence will support a finding that the defendant harbored the requisite specific intent to kill both the primary target and everyone within the zone of fatal harm." (*Canizales, supra*, 7 Cal.5th at p. 607; *People v. Mumin* (2023) 15 Cal.5th 176, 197 [" '[i]f the evidence supports a reasonable inference of the [defendant's] requisite intent, it necessarily follows that the jury could find it was the only reasonable inference' "].)

### C. Analysis

"Section 1172.6 offers resentencing for petitioners who have not been determined beyond a reasonable doubt to have the degree of culpability now required for a murder, attempted murder, or manslaughter conviction." (*People v. Strong, supra*, 13 Cal.5th at p. 720.) Relief under section 1172.6 is available to defendants convicted under the

natural and probable consequences doctrine or another theory under which malice is imputed to a person based solely on that person's participation in a crime. (*Id.*, subd. (a).) Thus, when the jury instructions or the jury's verdict reflect that the defendant was not convicted under such a theory, the petition may be denied as a matter of law. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review dism. Dec. 1, 2021, S266336 [instructions]; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864, 866-867 [verdict].)

We acknowledge that "section 1172.6 relief is not necessarily confined to those who might have been able to obtain relief through sufficiency-of-the-evidence claims raised on direct appeal or through functionally similar claims raised on habeas corpus." (*People v. Strong, supra*, 13 Cal.5th at p. 720, fn. 5.) But even if we agreed with Edwards's assertion that there was insufficient evidence to support the kill zone theory on some, or even all, of his premeditated attempted murder convictions, we do not agree that his claim may be raised in the context of section 1172.6 proceedings.

The kill zone theory sets forth circumstances by which the jury may infer the defendant possessed the intent to kill; it does not implicate imputed malice. Attempted murder requires a specific intent to kill. (*People v. Lee* (2003) 31 Cal.4th 613, 623.) The kill zone theory of attempted murder is not an exception to that requirement but rather a "theory for establishing the specific intent to kill required for conviction of attempted murder." (*Canizales, supra*, 7 Cal.5th at p. 607.) "The kill zone theory looks to circumstantial evidence to support a permissive inference regarding a defendant's intent." (*Id.* at p. 606.)

We further observe that to be eligible for relief under section 1172.6, the superior court must conclude that "the petitioner could not presently be convicted of murder *because of* changes to Section 188 or 189 made effective [by Senate Bill No. 1437]." (§ 1172.6, subd. (a)(3), italics added.) Because the kill zone theory does not implicate changes made to sections 188 or 189 by the enactment of Senate Bill No. 1437, Edwards's challenge to his convictions upon the kill zone theory may not be raised in the

context of section 1172.6 proceedings. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 947 ["The mere filing of a section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings"].)

## III.   Edwards's Ineffective Assistance of Counsel Claim

Finally, Edwards asserts that he was denied his Sixth Amendment right to the effective assistance of counsel. He contends that appointed counsel "filed no papers, presented no evidence, made no arguments, and permitted readily-discernible errors to [occur] without comment." We conclude that Edwards has failed to establish his claim.

### A. *Legal Principles*

To prevail on a claim of ineffective assistance of counsel, an appellant is required to make a two-part showing. First, they must establish that "counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) Second, they must show that trial counsel's deficient performance was prejudicial. (*Ibid.*) Prejudice must be affirmatively shown; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

### B.  *Analysis*

At Edwards's evidentiary hearing, the record of conviction supplied overwhelming evidence that he was the sole and actual shooter and that he had acted with express malice. Edwards fails to identify the existence of any new, persuasive evidence that could have undermined these conclusions. The record demonstrates that appointed counsel requested the court set the evidentiary hearing out so that he could investigate whether any new evidence existed. We presume that no new evidence was discovered.

21.

Edwards argues that because he was only 22 years old at the time of the offense, his attorney could have argued that he was unable to fully perceive risk and consequences, which affected his ability to form express malice. We agree with Edwards that the trial court probably did not consider this factor, even implicitly. The cases that have held that a section 1172.6 petitioner's age at the time of a murder is a relevant factor have done so in analyzing whether the petitioner had acted with implied malice in the commission of a second degree murder (see *People v. Pittman* (2023) 96 Cal.App.5th 400) or with reckless indifference to human life pursuant to the felony murder rule (see *People v. Oliver* (2023) 90 Cal.App.5th 466, *In re Moore* (2021) 68 Cal.App.5th 434, 439, *People v. Jones* (2022) 86 Cal.App.5th 1076, 1093). In our view however those questions are distinct from the question of whether a 22-year-old man, who was the sole perpetrator of a series of shootings, could form the intent to kill.

Even assuming appointed counsel should have raised the issue of Edwards's age at the time of his crime, we conclude that any presumed error is harmless under *Watson*. (See *People v. Pittman, supra*, 96 Cal.App.5th at pp. 417-418 [applying *Watson*], *People v. Oliver, supra*, 90 Cal.App.5th at p. 489 & fn. 8 [same]; see also *People v. Epps, supra*, 25 Cal.4th at p. 29 [*Watson* applies to the denial of a right that "is purely a creature of state statutory law"].) Other than the fact of his age, Edwards marshals no evidence demonstrating that his actions were motived by "relative impulsivity" or his "vulnerability to peer pressure." (*People v. Oliver, supra,* 90 Cal.App.5th at p. 489.) Where there is "no evidence" that a defendant's "criminal behavior was motivated by either of these two factors," the trial court's failure to consider relative youth is harmless. (*Ibid.*)

Further, insofar as appointed counsel failed to object to the superior court's reliance upon findings from our direct appeal, some of which may have been outside of our procedural history, the record does not support Edwards's claim that the error was prejudicial. As stated in Part I.B.3, *ante*, our appellate opinion's finding that Edwards

22.

was the sole and actual shooter is consistent with the trial transcripts considered at the evidentiary hearing below.

We conclude that based upon the overwhelming evidence supporting Edwards's guilt, the filing of motions or additional argument by appointed counsel would have been futile. Trial counsel "is not required to make futile motions or to indulge in idle acts to appear competent." (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091-1092, citing *People v. Turner* (1992) 7 Cal.App.4th 1214, 1219.) Nor is trial counsel "required to make futile objections, advance meritless arguments or undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People v. Jones* (1979) 96 Cal.App.3d 820, 827.) We therefore reject Edwards's claim.

## DISPOSITION

The trial court's order denying Edwards's petition for resentencing (§ 1172.6) is affirmed.


SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


SNAUFFER, J.